IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANIEL E. THIEL,<br>6701 Greenwich Rd.<br>P.O. Box 806<br>Westfield Center, Ohio 44251 | )<br>)<br>)<br>) Case No: 20 CV 2658<br>) |
| Plaintiff,<br>v. | ) JUDGE:_____<br>)<br>) |
| VILLAGE OF WESTFIELD CENTER<br>6701 Greenwich Rd.<br>P.O. Box 750<br>Westfield Center, Ohio 44251, | )<br>)<br>) JUDGE POLSTER<br>)<br>) MAG. JUDGE BAUGHMAN |
| THOMAS HORWEDEL<br>6701 Greenwich Road<br>P.O. Box 750<br>Westfield Center, Ohio 44251,<br>In his individual capacity and as Mayor<br>of the Village of Westfield Center, | )<br>)<br>)<br>)<br>)<br>) |
| PAUL SCHISMONE<br>6701 Greenwich Road<br>P.O. Box 750<br>Westfield Center, Ohio 44251,<br>In his individual capacity and as a<br>Village of Westfield Center police officer, | )<br>) FILED<br>) NOV 25 2020<br>) CLERK, U.S. DISTRICT COURT<br>) NORTHERN DISTRICT OF OHIO<br>) CLEVELAND |
| Defendants. | ) |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF WITH JURY TRIAL DEMAND**

**INTRODUCTORY STATEMENT**

1. This is an action for damages sustained by a citizen of the United States and for injunctive relief against the Village of Westfield Center, Medina County, Ohio, its Mayor, and a Village

police officer. These officials, acting under color of law, violated basic rights of the Plaintiff guaranteed by 42 U.S.C § 1983 and the First, Fifth and Fourteenth Amendments to the United States Constitution.

2. In bringing this action, Plaintiff seeks to vindicate his constitutional rights and to hold accountable municipal officials, including the Village's highest official who violated the public trust by unlawfully using their police power to deny a citizen and perceived political opponent the proper exercise of his First Amendment right to free speech.

3. The actions of these officials, which included threats of arrest, constitute unconstitutional First Amendment retaliation and an unlawful prior restraint on Plaintiff's speech because they a) prevented him from displaying his campaign banner in a public forum, b) asserted as a pretext for their actions unconstitutional local ordinances, and c) have a chilling effect on any future exercise of those rights by Plaintiff.

4. Village zoning ordinances regulating signage which Defendants ostensibly relied on to infringe upon Plaintiff's right to free expression represent an unconstitutional prior restraint on political speech because they discriminate against political and campaign signs based on content, are overbroad, and are not necessary to achieve compelling state purposes.

5. Because Defendants ostensibly relied upon these ordinances to force Plaintiff to take down his campaign banner in a public forum and to threaten him with arrest, Plaintiff has standing to challenge their illegal actions and those ordinances.

6. Plaintiff brings this action seeking monetary damages and an order permanently enjoining the Village and its officials from enforcing these ordinances as enacted because they prohibit political and campaign signs in public forums, discriminate against constitutionally-protected

speech on the basis of its content, impose unconstitutional time limits upon such speech, and because they are vague, overbroad, and overreaching.

7. Plaintiff seeks also to restore his public reputation in the community sullied by Defendants when they, without due process of law, forcibly and publicly threatened him with arrest for exercising his constitutional rights.

8. Actions like those taken by Defendants in this matter infringe upon the most basic and fundamental rights of Americans and demonstrate the danger to the Nation's liberties posed by elected officials who would forcefully censor free expression to serve their own ends.

## II. JURISDICTION AND VENUE

9. This action arises under the United States Constitution, particularly the First, Fifth, and Fourteenth Amendments, and under federal law, particularly 42 U.S.C. §§ 1983 and 1988.

10. This Court is vested with original jurisdiction over these federal claims by operation of 28 U.S.C. § 1331 and 1343(a)(3) and (4).

11. This Court is authorized to award the requested damages pursuant to 28 U.SC. §§ 1343 and 1367.

12. This Court is authorized to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

13. This Court is authorized to award attorneys' fees pursuant to 42 U.S.C. § 1988.

14. Venue is proper in the United States District Court for the Northern District of Ohio under 28 U.S.C. §1391(b), in that the events giving rise to the claim occurred within the District.

## III. IDENTIFICATION OF PLAINTIFF

15. Plaintiff Daniel Thiel ("Thiel") is a resident of the Village of Westfield Center ("Village"), and at all time relevant to the allegations of this complaint was a resident of Medina County, Ohio, and a citizen of the United States.

16. In the summer of 2019, Plaintiff Thiel was asked by a retiring member of the Village Council to consider running for the latter's seat on the Council in the upcoming fall election.

17. After discussions with family and trusted associates, Plaintiff Thiel decided to seek the Council seat and filed with the elections commission as a candidate.

## IDENTIFICATION OF DEFENDANTS

18. Defendant Village is incorporated under the laws of the State of Ohio and is authorized to sue and to be sued. It is a "person" subject to suit within the meaning of 42 U.S.C. § 1983.

19. The Village is governed by the laws of the United States and of the State of Ohio, and also enforces its own ordinances, The Village Center Code of Ordinances ("WC Code").

20. Among these ordinances are zoning ordinances which include signage ordinances, found in WC Code, Chapter 1280 ("Ordinances").

21. The Ordinances impose special restrictions on political or campaign signs including size, placement, and time restrictions, which are not imposed on other kinds of signs.

22. The Village is responsible for enforcement of the Ordinances and is liable for the actions of its officers, employees, and agents who execute the Village's official policies or custom.

23. Defendant Thomas Horwedel ("Horwedel") was, at all relevant times, the Mayor of the Village, the chief officer, and decision and policymaker for the Village, and was acting individually and as the agent of the Village. He is sued individually and in his official capacity.

24. Defendant Paul Schismone ("Schismone") was, at all relevant times, employed as a police officer by the Village and acting in that capacity as the agent, servant, and employee of the Village. He is sued individually and in his official capacity.

25. At all relevant times and in all their actions recounted herein, Horwedel and Schismone were acting under color of law pursuant to their authority to represent the Village.

## IV. STATEMENT OF FACTS

26. Every fall for a number of years, on or around the Labor Day weekend, the Village has held a very popular community event on its "Village Circle" which includes a vintage car show and a community rummage sale.

27. Among the buildings on the Village Circle are a pair of churches and the Township firehouse.

28. In the fall of 2019, Plaintiff Thiel was a candidate for the Village Council in the Village Center, located in Medina County, Ohio.

29. During the Labor Day weekend, approximately two months prior to the election, Plaintiff Thiel, his wife, and their five minor children rented two of the tables available for merchants and other purveyors at the outdoor rummage sale on the Circle in the township firehouse.

30. The rummage sale at the firehouse was a public forum.

31. A friend who raises vegetables sold his fresh produce at the outward-facing table, and Plaintiff Thiel, after obtaining permission from the chief of the Township Fire Department, displayed a banner for his Village Council candidacy over that table. Plaintiff Thiel's wife and five young children were also present at the tables throughout the day.

32. Nearby, other candidates, including Defendant Horwedel's hand-picked challenger to Plaintiff Thiel, Val Koneck, were also electioneering, passing out campaign literature on Village property.

33. Defendant Schismone, acting in his official capacity, in uniform and under color of law, approached Plaintiff Thiel and his family and stated that "the Mayor wanted the banner taken down."

34. Plaintiff Thiel objected to removing his banner and explained he had the right to keep it on the rented table.

35. The Fire Chief, who was nearby, approached and told Defendant Schismone that Plaintiff Thiel had his permission to display the political banner.

36. Defendant Schismone stated he knew of no law that would require Plaintiff Thiel or the Fire Chief to take the banner down and he left the area.

37. However, shortly thereafter, Defendant Horwedel appeared at Plaintiff Thiel's table and, together with Defendant Schismone, both acting in their official capacities and under color of law, and individually, demanded that Plaintiff Thiel take down the banner.

38. Defendant Horwedel appears on a video repeatedly shouting, "You got to take it down, you got to take it down."

39. To enforce the demand of Defendant Horwedel, Defendant Schismone placed his hand on his holstered gun, came behind the table, and appeared directly before Plaintiff Thiel and his minor children.

40. The armed appearance by Defendant Schismone, prompted by Defendant Horwedel, acting under color of law, posed a potential threat of bodily injury or death to Plaintiff Thiel and his children.

41. When Plaintiff Thiel saw Defendant Schismone grip his gun, , he immediately decided to take down the banner to avoid a physical altercation or arrest. Feeling intimidated and wanting to avoid being arrested or worse in front of his young daughters, Plaintiff Thiel complied with the Mayor's unconstitutional order.

42. Upon information and belief, none of the other individuals who were distributing campaign literature on the Village Circle, including Val Koneck, were confronted by either Defendant Horwedel or Defendant Schismone on behalf of the Village or ordered to cease any of their electioneering activities.

43. A few days later, Plaintiff Thiel was at city hall on another matter when Defendant Schismone approached him, showed Plaintiff Thiel a piece of paper with a Village ordinance and said that he had "looked it up."

44. As he spoke these words, Defendant Schismone waved the paper at Plaintiff Thiel which purportedly showed a local ordinance or ordinances flatly prohibiting the display of political signage on public property or within thirty (30) days of an election.

45. The Village sign ordinances provide, respectively, in relevant part, that "political and campaign signs shall not be posted on …public property" and shall "not to be erected more than 30 days prior to the day of election."

46. In threatening to arrest Plaintiff Thiel, Defendants knew or should have known they were violating his constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

47. The dispute over the display of Plaintiff Thiel's banner took place in the full sight and hearing of dozens, if not hundreds, of his fellow citizens who were present at the event, including Plaintiff Thiel's young children.

48. A few days after the confrontation between Plaintiff and Defendants, some of Plaintiff Thiel's fellow Village members informed Plaintiff Thiel of the circulation of a public rumor that Plaintiff Thiel had "gotten in trouble with the law" and had been, or was about to be, arrested.

49. Upon information and belief, the persistence of this rumor impugned Plaintiff Thiel's reputation in the community and negatively impacted his chances of winning the Council seat for which he was running.

50. Plaintiff Thiel wound up losing the election by a total of 17 votes out of several hundred cast in the race.

51. Plaintiff Thiel's young daughter had nightmares after the event and even to this day tells people she was afraid her daddy was going to get shot or arrested by the police.

## V. ALLEGATIONS OF LAW

52. The Village's sign ordinances are unconstitutional under the First, Fifth, and Fourteenth Amendments for flatly prohibiting the display of political and campaign signage on public property while permitting the display of other signs there, and by otherwise limiting the time that political signs can be displayed.

53. All the acts of Defendants' acts were executed under the color of law.

54. Plaintiff was assaulted by the Defendants Howardel and Schismone, suffered irreparable harm from the conduct of all Defendants with respect to his candidacy for the Village Council and to his personal reputation in the community and well being.

55. Plaintiff has no adequate remedy at law to correct or redress the deprivation of his rights with respect to his candidacy because the election is over.

56. Unless Defendants are enjoined from enforcing the Village's unconstitutional signage ordinances, Plaintiff and others in the Village running for political office or supporting political candidates in future elections will likely suffer similar irreparable injury.

57. The Village is liable for the actions of its Mayor and police officer in this matter because those persons were acting under color of law to enforce the Village's unconstitutional official policy and ordinances.

58. An unconstitutional restriction on First-Amendment free speech was imposed on Plaintiff Thiel repeatedly, first, by Defendant Schismone attempting to intimidate Plaintiff to take down his campaign banner after Plaintiff had received permission from a Township official to display it and second, by Defendant Howardel's order to force a takedown of the sign after it had been lawfully placed on a legally rented table.

59. Defendant Horwedel, who imposed the unconstitutional restrictions on Plaintiff Thiel's speech by his own actions as well as those of Defendant Schismone at his behest, was the final policymaker for the Village.

60. Defendant Horwedel exercised his final authority when he decided to trample on Plaintiff Thiel's constitutional right to free speech.

61. Defendant Horwedel's actions demonstrated a particular animus against Plaintiff Thiel and were motivated by his political opposition to Plaintiff Thiel's candidacy.

## VI. CAUSES OF ACTION

### First Cause of Action: First Amendment Restraint and Retaliation

#### A. (Against Defendants Horwedel and Schismone)

62. Plaintiff here incorporates by reference the preceding paragraphs 1 through 61.

63. In displaying his campaign banner in the public forum at the event on the Village Circle, Plaintiff Thiel was engaging in a constitutionally protected activity.

64. Defendants' adverse actions injured Plaintiff Thiel by restraining, preventing, impairing, and retaliating against him for his lawful speech in a way likely to chill a person of ordinary firmness from propounding further lawful speech. In fact, as a proximate result of Defendants' adverse actions, that chill continues to this day.

65. Defendant Horwedel's conduct, and by extension that of Defendant Schismone at Horwedel's behest, were motivated by Plaintiff. Thiel's exercise of his constitutional rights in displaying the banner and by its message.

66. As a direct and proximate result of the actions of Defendants Horwedel and Schismone, Plaintiff has suffered and continues to suffer economic and non-economic damages for which these Defendants are liable.

67. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### B. (Against Defendant Schismone)

68. Defendant Schismone's threat to arrest Plaintiff Thiel for violating the Village's sign ordinances was such an act as would likely chill a person of ordinary firmness from continuing that activity.

69. Defendant Schismone's threat was expressly motivated by Plaintiff. Thiel's protected activity at the rummage sale as demonstrated by his waving the ordinance at Plaintiff Thiel and referencing Plaintiff Thiel's protected speech there.

70. As a direct and proximate result of these actions of Defendant Schismone, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant Schismone is liable.

71. Defendants Schismone's actions were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendant and others from engaging in this type of unlawful conduct.

## Second Cause of Action:
## Municipal *Monell* Liability, 42 U.S.C. § 1983 – Authorized Action
## (Against Defendant The Village)

72. Plaintiff Thiel's display of his campaign sign on the firehouse property was a protected activity in a public forum under the First Amendment to the United States Constitution.

73. The Village imposed an unconstitutional restriction on Plaintiff Thiel's speech *repeatedly*: first, when Defendant Schismone told Plaintiff Thiel that the Mayor wanted him to take down his banner, then when Defendant Horwedel ordered him to take down the banner after it had been lawfully restored, and finally when Defendant Schismone threatened to arrest for displaying his banner. These repeated acts also demonstrate a custom or practice of the Village.

74. Moreover, the Mayor, the final policymaker of the Village, was the one who imposed these unconstitutional restrictions on Plaintiff Thiel's speech, further establishing that such action is an official policy or custom of the Village.

75. In addition to Defendants' animus against its message, Plaintiff Thiel's banner was unconstitutionally taken down because it was deemed a violation of the Village's sign ordinance, which is unconstitutionally overbroad and discriminatory.

76. Plaintiff Thiel suffered injury to his First, Fifth, and Fourteenth Amendment rights due to the unconstitutional application of the Village's sign ordinance to his conduct at the Township firehouse.

77. Defendant Village is directly and proximately liable for this injury and for Plaintiff's economic and non-economic damages.

### Third Cause of Action:
### Municipal *Monell* Liability, 42 U.S.C. § 1983 – Unconstitutional Municipal Ordinance
### (Against Defendant The Village)

78. Plaintiff here incorporates all previous allegations through 77.

79. The Village's sign ordinance violates the First, Fifth, and Fourteenth Amendments by imposing time restrictions on the display of political and campaign signs and flatly prohibiting political and campaign signs on public property while permitting the posting of other signs there.

80.. The Village's ordinance limiting political and/or campaign signage is unconstitutionally overbroad, discriminatory, and not necessary to serve any compelling Village purpose,

81. Plaintiff Thiel suffered injury to his First Amendment rights due to the unconstitutional application of the Village sign ordinance to his conduct at the Township firehouse.

82. Plaintiff Thiel will be inhibited by the Village's sign law should he again seek political office in the Village.

83. The Village is directly and proximately liable for this injury and for Plaintiff's economic and non-economic damages.

84. Defendant Horwedel authorized and implemented the unconstitutional custom, policy, or practice of refusing to distinguish between protected and unprotected speech in public fora.

85. Defendant Horwedel was authorized to make and/or implement official policy for the Village on these issues.

86. As a direct and proximate result of Defendants' unlawful actions, Plaintiff Thiel has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

87. Defendant Village should be permanently enjoined from enforcing its sign law barring the posting and duration of political signs.

### Fourth Cause of Action: Retaliation
### (Against all Defendants Horwedel and Schismone

88. Plaintiff here incorporates all previous allegations.

89. Plaintiff Thiel's display was protected speech because the restriction imposed by Defendant Horwedel was viewpoint-based. The banner was taken down by Defendants because it was a campaign slogan advocating the election of Plaintiff. Thiel, the political opponent of Defendant Horwedel's hand-picked opposition candidate, to the Village Council.

90. The threats of an arrest made by Defendants Horwedel and Schismone violated Plaintiff Thiel's clearly established First, Fifth, and Fourteenth Amendment rights.

91. No reasonable person or reasonably competent public official would have believed these threats were lawful, given the state of the law and Defendants' motivation to favor another candidate over Plaintiff Thiel for election to the Village Council.

92. Defendants were motivated in whole or in part to take the actions they took because of Plaintiff Thiel's constitutionally protected speech and their rejection of the viewpoint expressed in his sign.

93. Defendants, acting under color of law, violated the First, Fifth, and Fourteenth Amendments.

94. As a direct and proximate result of the actions of Defendants Horwedel and Schismone, Plaintiff has suffered and continues to suffer economic and non-economic damages for which these Defendants are liable.

95. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## Prayer for Relief

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Enter judgment in Plaintiff's favor on all claims for relief;

2. Declare that Defendants' acts and conduct violate the First, Fifth, and Fourteenth Amendments to the United States Constitution;

3. Award injunctive relief enjoining Defendants from any further unlawful application of the Village's sign regulation pertaining to political signs.

4. Declare that Defendants are liable for damages on all claims for relief;

6. Award full compensatory damages, including but not limited to damages for assault, defamation, and for the pain and suffering, mental anguish, emotional distress, humiliation, embarrassment, and inconvenience that Plaintiff has suffered and is reasonably certain to suffer in the amount of $250,000;

7. Award punitive and exemplary damages for the Defendants' intentional, malicious, and egregious acts and callous and reckless disregard of Plaintiff's constitutional rights in the amount of $2,000,000;

8. Award pre-and post-judgment interest at the highest lawful rate;

9. Award Plaintiff his reasonable attorneys' fees and all other costs of suit available under 42 U.S.C. § 1988(b); and

10. Award all other relief in law or equity, including injunctive relief, to which Plaintiff is entitled and that the court deems equitable, just, or proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(B) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury in this action on all issues so triable.

_____
William L. Tabac, 0032969
16137 McCall Rd.
Garrettsville, OH 44231
216-310-5705
FAX: 440-548-5302
williamtabac@gmail.com